## Hurley et al. v. West Kentucky Coal Co.

April 27, 1943.

Lee Gibson and G. E. Jones for appellants.

King & Flournoy for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Oliver Hurley and Ollie Hurley, his wife, brought an action in the Union circuit court against West Kentucky Coal Company to quiet the title to 109 acres of land.

Oliver Hurley traces his title back to George O. Daniel who at one time owned both the surface and the minerals. On November 1, 1904, Daniel and wife executed and delivered to the Tradewater Coal Company a deed by which they conveyed to the company certain mineral rights. The Tradewater Coal Company conveyed its interest in the land to the West Kentucky Coal Company. In the petition it is alleged that the West Kentucky Coal Company is wrongfully claiming all the minerals in and under the land, whereas it owns only the coal. In an amended petition it is alleged that under the conveyance made by George O. Daniel and wife to the Tradewater Coal Company no part of the oil or gas or other mineral except coal was conveyed, and it is further alleged that the Tradewater Coal Company, by virtue of its articles of incorporation, only had authority to conduct the business of buying, selling, leasing and operating coal mines and properties and did not have the right or power under its

articles of incorporation to purchase the oil, gas or other minerals upon and under the land. Copies of the deed to appellant, the deed from Daniel and wife to the Tradewater Coal Company, and of the articles of incorporation of the Tradewater Coal Company were filed with and made a part of the petition as amended. A demurrer to the petition as amended was sustained, the plaintiff declined to plead further, and judgment was rendered dismissing the action. From that judgment the plaintiffs have appealed.

The effect of the court's ruling was to adjudge that the deed from George O. Daniel to the Tradewater Coal Company conveyed to it all minerals under the tract of land in question, including gas and oil rights. The granting clause in the deed from Daniel to the Tradewater Coal Company reads: "All the coal mineral and mining rights together with the right to mine and remove same lying upon or under the said land." The habendum clause reads as follows: "To have and to hold said coal mineral and mining rights together with the right to mine and remove same." It will be noted that no punctuation mark appears in either excerpt from the Daniel deed. It is appellants' contention that the word "coal" as used in the deed is a descriptive adjective qualifying the noun "mineral," while appellee insists that the proper meaning is "coal, mineral and mining rights." If appellee's theory is correct then all minerals, including oil and gas, passed under the Daniel deed. Maynard v. McHenry, 271 Ky. 642, 113 S. W. (2d) 13.

We are unable to distinguish the present case from Franklin Fluorspar Co. v. Hosick, 239 Ky. 454, 39 S. W. (2d) 665, 666. There the granting clause in the deed read, "* * * hereby grant, bargain, sell and convey unto Henry J. Trabue his heirs and assigns forever, all the coal minerals and mining privileges and right to remove the same in and upon the following tract or survey of land to-wit * * *," and the deed was construed as conveying all minerals. In the course of the opinion it was said:

> "The rights of the parties turn on the meaning and proper construction of the words, 'all the coal minerals and mining privileges and right to remove the same.' Appellees insist that, there being no comma between the words 'coal' and 'minerals,' the meaning is coal minerals; but appellant insists that the proper meaning is 'coal, minerals, and mining

privileges. These rules as to the construction of a deed are well settled:

" 'The object in construing a deed is to ascertain the intention of the parties, and especially that of the grantor, from the words which have been employed in connection with the subject matter, and the surrounding circumstances.' 18 C. J. p. 252, Section 198.

"As to punctuation the rule is: 'It is ordinarily given slight consideration.' 18 C. J. p. 258, Section 207.

"The language of the deed is read under this rule: 'The construction must be reasonable and agreeable to common understanding, and the words employed in a deed should be given their fair and reasonable meaning, receiving the interpretation accorded them by the common usage of mankind, having in view the circumstances of their use and the context.' 18 C. J. p. 258, Section 209.

"The rule is also well settled that the deed will be construed most strongly against the grantor and in favor of the grantee if it admits of two constructions. Bain v. Tye, 160 Ky. 408, 169 S. W. 843; Land v. Land, 172 Ky. 145, 189 S. W. 1; Lovill v. Hatfield, 207 Ky. 142, 268 S. W. 807."

The Hosick case is controlling here. Even if it be conceded that there is some basis for the construction that "coal" was used as an adjective and not as a noun, there is more logical support for the contention that the word "mineral" was also used as an adjective and that the three words, "coal," "mineral" and "mining," qualified the word "rights."

The allegation in the petition as amended that the Tradewater Coal Company, under its articles of incorporation, did not have the right to buy oil or gas and did not buy any mineral from Daniel except coal does not present an extrinsic fact authorizing the construction of the deed in question contended for by appellants. The articles of incorporation of the Tradewater Coal Company confined the nature of the business which it might conduct to "the buying, selling, leasing, and operating coal lands and properties in Union County, Kentucky, and the holding, owning, working and operating coal mines and properties and the buying, selling, owning,

100

and operating such machinery paraphernalia fixtures etc. as may be necessary or convenient for the use of operating a coal mine and the owning, operating and conducting of such general store as may be necessary or convenient or useful to operate in conjunction with said business and the mining, buying, selling, and dealing in coal.'' This did not prevent it from acquiring the fee simple title to land underlaid with coal or from purchasing all the minerals, including coal, although it might be without power to conduct mining operations for minerals other than coal. It is a reasonable supposition that some landowners might object to severing the minerals from the surface or to selling less than all the minerals, and that in some instances it would be necessary for the corporation to acquire the fee simple title to land or to purchase all the minerals in order to enable it to carry on its authorized business of operating coal mines. The Daniel deed passed title to all minerals, and the court properly dismissed the petition as amended.

The judgment is affirmed.