## Bolen v. Casebolt.

(Decided Dec. 15, 1933.)

D. G. BOLEYN for appellant.

H. H. SMITH for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In 1887 Nimrod Triplett was the owner of a very large boundary of land on the head of Jones fork in Knott county. On May 24th of that year he deeded to his son, Daniel, a portion of this tract. On February 26, 1889, ignoring the deed made two years previous to Daniel, Nimrod Triplett conveyed all the land he owned on Jones fork, including the land he had theretofore conveyed to Daniel, to his son, William. On July 10, 1903, Nimrod and his son, Daniel, ignoring the deed which Nimrod had made to his son, William, gave an option on certain timber on, and all the mineral, oil, and gas under the land formerly owned by Nimrod Triplett to the Duncan Coal & Iron Company. The company made a substantial payment for the option, the balance to be paid when and if the company de-

termined to take up the option and then after a survey. The survey having been made, certain matters of disagreement arose between the company and the Tripletts, the company especially insisting that William Triplett should agree to join in the conveyance of the minerals and timber before it would go forward with the option. While William was willing to convey the coal and the timber to the company, he was very insistent that the oil and gas be retained in the family. It was his idea that he would execute a conveyance to the company in accordance with the option, but that it should by proper instruments reconvey the oil and gas to the Tripletts. Matters drifted along in this shape, and, while they were doing so, William Triplett seems to have conveyed the land which his father had conveyed to him to his brother, John Triplett, and John in turn reconveyed it to William. Passing over other conveyances had between the Tripletts, we find that on March 24, 1909, William finally conveyed back to his brother, Daniel, 100 acres of the land his father had originally conveyed to him. In this conveyance from Wiliam to Daniel appears this clause: "The mineral and timber and oil heretofore sold is excepted."

As a matter of fact, at this time, although he negotiations with the Duncan Iron & Coal Company had not then been consummated, neither had they been abandoned. On the same day as William conveyed this 100-acre tract to Daniel, Daniel conveyed the same boundary to his son-in-law, John Click, inserting in his deed a like clause with reference to the mineral, oil, and timber to that in his deed from William Triplett. On September 28, 1915, John Click sold the land he had gotten from Daniel to W. J. Slone, Jr., without making any exceptions in his deed, and on March 16, 1921, Slone sold and conveyed the land in question to the appellant, W. M. Bolen, likewise without any exceptions appearing in the deed. In the meantime, the negotiations between the Tripletts and the coal company finally petered out. In April, 1922, Daniel Triplett conveyed to the appellee, Riley Casebolt, the oil and gas under this 100-acre tract which had come into the ownership of the appellant, Bolen, and on October 28, 1922, William Triplett likewise conveyed the oil and gas under this land to Casebolt. The latter giving it out that he was the owner of this oil and gas, the appellant

brought this suit to quiet the title he claimed to the same. The case being submitted for judgment and the facts appearing as above outlined, the court dismissed the petition of the appellant, and, from that judgment, this appeal is prosecuted.

The case turns on the construction to be put upon the clause in William Triplett's deed to Daniel Triplett, and in Daniel Triplett's deed to his son-in-law, John Click, reading:

"The mineral and timber and oil heretofore sold is excepted and not conveyed in this deed."

It is conceded that Bolen not only had constructive notice of this clause because of the recording of the various deeds to which we have referred, but also had actual notice of it because of having witnessed a deed to certain other portions of the original Nimrod Triplett land, and in which there was reference to this clause in question. The Tripletts all testify, and there is no evidence to the contrary, that the reference to the mineral, timber, and oil in this clause is to all of the mineral, oil, and branded timber which was on and under the land, and for which they had given an option to the Duncan Coal & Iron Company, and that, while technically such mineral, oil, and timber had not been actually sold or conveyed to the coal and iron company, the purpose of the clause was to except from the conveyances in question that timber, mineral, and oil which had been optioned to the coal company. Nothing appearing to show a contrary intent of the parties, the word "mineral" included the gas as well as the oil which was specifically mentioned. Hudson & Collins v. McGuire, 188 Ky. 712, 223 S. W. 1101, 17 A. L. R. 148. It cannot be doubted that the parties to these conveyances in which the clause of exception appeared intended thereby to exclude from the conveyance the minerals, oil, gas, and certain timber therefrom. The use of the words "heretofore sold" was a mere description of this mineral, oil, and timber, and was not intended as limiting the estate reserved. This mineral, oil, and timber had been optioned to the coal company. The description of such mineral, oil, and timber as that heretofore sold was inaccurate, but the intent was plainly to except from the conveyance the mineral, timber, and oil which was the subject of the negotiations with the coal company, and which in fact comprised

certain branded timber and all the mineral and oil under the land. The exception in the deed would have been meaningless if the parties intended to except only such mineral and timber as had been sold for none had been sold. In the case of Jones v. Motley, 13 S. W. 432, 11 Ky. Law Rep. 921, a deed contained a reservation of "the bottom at the ford of the creek, which bottom is now under fence, and supposed to contain nine acres, more or less." By mesne conveyances the land deeded and the land reserved came into the possession of the appellees and appellants, respectively. As a matter of fact, the bottom actually under fence contained only 5 acres, but there was a strip running along the edge of the creek outside the fence and containing one and a fraction acres which was necessary to the use of the land reserved. In a contest over the ownership of this strip, the court held that the facts and circumstances of the case indicated clearly that the parties intended to include the strip in the land reserved, and that hence the words in the deed "under fence" should be held as merely descriptive and not intended as limiting the boundary of the reservation. Compare also the case of Rollins v. Clark, 8 Dana, 15. In the instant case, Bolen does not claim that he was misled into buying the land in question by any inaccurate description of the exception, nor does he plead an estoppel. He simply rests his case on the proposition that the parties by this clause did not in fact make any exception from their conveyances. This, we have seen, is not so. The oil and gas having been excepted; they did not pass by any of the conveyances above described to the appellant, and the court rightfully dismissed his petition.

Judgment affirmed.